1   ROBERT E. GOLDMAN, Esq. (S.B. #159989)
    Law Office of Robert E. Goldman
2   1 East Broward Blvd., Ste. 700
    Fort Lauderdale, FL 33301
3   Tele: (954) 745-7450
    Fax: (954) 745-7460
4

5   Attorney for Produce Center, Inc.

6

7

**FILED**

2008 MAY 23 P 2: 52

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  PRODUCE CENTER, INC.,

CV 08- 80116 MISC.

Case No.:

12              Petitioner,

JW

PVT

13  vs.

**PETITION REGARDING U.S.D.A.
DECISION AND ORDER**

14  SUNRIVER TRADING COMPANY
    LIMITED d/b/a SUNRIVER SALES,

15

16              Respondent.

17

18

19          Petitioner Produce Center, Inc., files this Petition Regarding U.S.D.A. Decision and

20  Order against Respondent SunRiver Trading Company Limited d/b/a SunRiver Sales, and

21  alleges:

22                      **JURISDICTION AND VENUE**

23          1.      This action is within the jurisdiction of this Court pursuant to 7 U.S.C. §499 of

24  the Perishable Agricultural Commodities Act of 1930 (referred to as the "PACA").

25          2.      Petitioner is a California corporation located in Salinas, California, which is in

26  Monterey County.

27          3.      Respondent is a California corporation located in Visalia, California.

28

1

Petition                                                        Case No.

4.    Venue is proper in this District, since this is an appeal from a USDA decision made without an oral hearing, and so this suit may be filed in the district court of the United States where Petitioner is located. A copy of Decision and Order issued by the USDA is attached hereto.

**GROUNDS FOR PETITION**

5.    Petitioner relies upon the following ground to defeat the rights of Respondent to the damages claimed: the USDA determined that Respondent breached its contract to ship a container of grapes that would satisfy good delivery standards upon arrival and inspection at Petitioner's customer, but the USDA did not award Petitioner a sufficient amount of damages for the breach due to its lacking sufficient evidence of the Petitioners customer's efforts to promptly and properly sell the grapes, and due to its lacking evidence that Respondent shipped a similar load of grapes to another customer which had a similar level of defects and yet Respondent accepted responsibility for a higher amount of damages than it accepted with Petitioner, and Petitioner, by using the discovery available in this forum, and by calling Petitioners customer's employees as witnesses whose credibility can then be evaluated when they testify about their efforts to promptly sell the defective grapes, can provide the evidence was absent in the U.S.D.A. paper only proceeding, and thereby establish the full amount of its damages, and so be determined to owe Respondent no damages.

WHEREFORE, Petitioner demands a trial *de novo* concerning all decisions made by the USDA against Petitioner, and a judgment against Respondent which reverses the USDA's decision against the Petitioner, and provides that Respondent shall recover nothing by way of its claim against Petitioner, and that Petitioner recovers its attorney's fees and costs in this proceeding, and for such other relief as the Court deems just and proper.

2

Petition                                      Case No.

1

## **DEMAND FOR JURY TRIAL**

2    Petitioner demands a trial by jury as to all issues so triable.

3

4

5    By:_____

6    Robert E. Goldman, Esq.
     CA Bar #159989

7    Robert@goldmanlaw.com
     LAW OFFICE OF ROBERT E. GOLDMAN

8    1 East Broward Blvd., Ste. 700
     Fort Lauderdale, FL 33301

9    (954) 745-7450
     (954) 745-7460  Fax

10   Attorney for Petitioner

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petition                                                    Case No.

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

| | | |
|---|---|---|
| Sunriver Trading Company Limited, d/b/a Sunriver Sales, | ) ) ) | PACA Docket No. R-08-022 |
| Complainant | ) ) | |
| v. | ) ) ) | |
| Produce Center, Inc., | ) ) | |
| Respondent | ) ) | Decision and Order |

### Preliminary Statement

This is a reparation proceeding under the Perishable Agricultural Commodities

Act, 1930, as amended (7 U.S.C. § 499a *et seq.*), hereinafter referred to as the Act. A

timely Complaint was filed with the Department in which Complainant seeks a reparation

award against Respondent in the amount of $34,540.00 in connection with one truckload

of grapes shipped in the course of interstate commerce.

Copies of the Report of Investigation prepared by the Department were served

upon the parties. A copy of the Complaint was served upon the Respondent, which filed

an Answer thereto, denying liability to Complainant.

Although the amount claimed in the Complaint exceeds $30,000.00, the parties

waived oral hearing. Therefore, the documentary procedure provided in Section 47.20 of

the Rules of Practice (7 C.F.R. § 47.20) is applicable. Pursuant to this procedure, the

verified pleadings of the parties are considered part of the evidence of the case, as is the

Department's Report of Investigation ("ROI"). In addition, the parties were given the

opportunity to file evidence in the form of verified statements and to file Briefs. Complainant filed an Opening Statement. Respondent did not elect to file any additional evidence. Neither party submitted a Brief.

### Findings of Fact

1.    Complainant, Sunriver Trading Company Limited, doing business as Sunriver Sales, is a corporation whose post office address is P.O. Box 2738, Visalia, California, 93279-2738. At the time of the transaction involved herein, Complainant was licensed under the Act.

2.    Respondent, Produce Center, Inc., is a corporation whose post office address is P.O. Box 37, Salinas, California, 93902. At the time of the transaction involved herein, Respondent was licensed under the Act.

3.    On or about December 6, 2006, Complainant, by oral contract, sold to Respondent, and agreed to ship from loading point in the state of California, to Respondent's customer, Sun Commodities, in Pompano Beach, Florida, 1,950 cartons of 19-pound bagged Red Globe grapes at $17.70 per carton, or $34,515.00, plus $25.00 for a temperature recorder, for a total f.o.b. contract price of $34,540.00.

4.    On December 11, 2006, at 12:40 p.m., a U.S.D.A. inspection was performed on the grapes mentioned in Finding of Fact 3 at the warehouse of Sun Commodities, in Pompano Beach, Florida, the report of which disclosed 16% average defects, including 2% damage by shattered berries, 1% damage (including 1% serious damage) by crushed, split open berries, 1% damage (including 1% serious damage) by sulphur dioxide injury, 11% damage (including 11% serious damage) by wet and sticky berries, and 1% decay. Pulp temperatures at the time of the inspection ranged from 37 to 38 degrees Fahrenheit.

5.      On January 3, 2007, a second U.S.D.A. inspection was performed on 970 cartons of the grapes at the warehouse of Sun Commodities, in Pompano Beach, Florida, the report of which disclosed 28% average defects, including 10% damage (including 10% serious damage) by wet and sticky berries, 4% damage by shattered berries, and 14% decay. Pulp temperatures at the time of the inspection ranged from 38 to 39 degrees Fahrenheit. In the remarks section of the certificate the inspector wrote "APPLICANT STATES ABOVE PRODUCT TO BE DUMPED."

6.      Sun Commodities reported gross sales of $9,854.40 (980 cartons at an average sales price of $10.03 per carton plus $25.00 for the temperature recorder), from which it deducted a dump fee of $600.00 for the 970 cartons of grapes that were dumped, freight in the amount of $2,531.17 (970 cartons at $2.61 per carton), handling in the amount of $970.00, and the U.S.D.A. inspection fee of $95.00, which left a net amount due Respondent for the grapes of $5,658.23. From this amount, Respondent deducted $0.25 per carton, or $487.50, and paid Complainant the balance of $5,170.73 with check number 047811, dated April 24, 2007.

7.      The informal complaint was filed on January 25, 2007, which is within nine months from the accrual of the cause of action.

4

## Conclusions

Complainant brings this action to recover the agreed purchase price for one truckload of grapes sold to Respondent. Complainant has, however, acknowledged in its Opening Statement that Respondent has remitted the sum of $5,170.73 for the grapes.[1] Therefore, the amount in dispute is the unpaid invoice balance of $29,369.27. In defense of its failure to pay Complainant this amount, Respondent asserts in its sworn Answer that the grapes failed to make grade due to excessive serious defects, as a result of which Complainant instructed Respondent to have its customer "handle the product for his account or P.A.S. terms."[2] In accordance with this agreement, Respondent states it has provided an account of sales and paid Complainant the proceeds received from its customer less brokerage.[3]

In response to Respondent's allegations, Complainant filed additional evidence in the form of an Opening Statement affidavit signed by its salesperson, John Doyle. In the affidavit, Mr. Doyle states he personally negotiated the transaction in question with Respondent's salesman and buyer, Andy Pina. Mr. Doyle states that when Mr. Pina informed him of the U.S.D.A. inspection results, he advised Mr. Pina that he would be more than happy to take the grapes back and move them to a customer in Dallas, Texas. According to Mr. Doyle, Mr. Pina stated at that time that his customer needed the grapes and would sell them right away. Mr. Doyle states he nevertheless informed Mr. Pina on a daily basis that if Respondent's customer was unable to move the grapes quickly and at a good price, he should allow Complainant to move the grapes to its customer in Dallas.

---

[1] See Opening Statement Affidavit of John Doyle, Complainant's Salesperson, page 2.
[2] See Answer, paragraph 5.
[3] See Answer, paragraph 6.

At one point, Mr. Doyle states Mr. Pina requested that he deal with Respondent's customer directly, but Mr. Doyle asserts that he at all times considered the contract as being with Mr. Pina of Respondent, and that Mr. Pina was responsible for making sure that the grapes were sold promptly and properly for the best advantage of Complainant.[4] In this regard, Mr. Doyle refers to the U.S.D.A. inspection of January 3, 2007, which shows that 970 cartons of grapes remained unsold as of that date.[5] Mr. Doyle cites this as evidence that Respondent's customer did not resell the grapes in a prompt and proper manner.[6]

Upon review of the pleadings submitted by the parties, we note first that Respondent suggests in its sworn Answer that the terms of the contract were modified after the grapes were inspected at the place of business of Respondent's customer. Specifically, Respondent states that Complainant advised Respondent to have its customer handle the grapes for "his account" or on "P.A.S." terms. The problem with this statement, however, is that the words used by Respondent may be interpreted as having very different meanings, i.e., the phrase "handling for his account" suggests a consignment agreement,[7] whereas the term "P.A.S." stands for price after sale, a term that is normally understood as meaning a sale where the price is left to be agreed upon between the parties after the goods are resold.[8] Moreover, Complainant's response provides no clarity to this issue. While Complainant states that Respondent was responsible for selling the grapes "for the best advantage" of Complainant, a phrase that

---

[4] See Opening Statement Affidavit of John Doyle, Complainant's Salesperson, page 2.
[5] See Answer, Exhibit #7.
[6] See Opening Statement Affidavit of John Doyle, Complainant's Salesperson, page 3.
[7] See United Packing Co. v. D.L. Pizza Co., 18 Agric. Dec. 161 (1959).
[8] See Eustis Fruit Co., Inc. v. The Auster Co., Inc., 51 Agric. Dec. 865 at 877 (1991).

could be interpreted as suggesting a consignment arrangement, this statement may be just as readily understood as meaning that Respondent, having notified Complainant of an alleged breach of contract, was obligated to promptly resell the grapes to minimize the damages flowing to Complainant as a result of the alleged breach. Consequently, since we cannot ascertain the nature of the modification, nor are we certain that a modification was intended, we conclude that the original terms of the contract remained in effect after the grapes were inspected at the contract destination.

Next we will consider whether the evidence establishes a breach by Complainant of the original contract. The grapes were sold under f.o.b. terms, which means that the warranty of suitable shipping condition is applicable.[9] The Regulations (7 C.F.R. § 46.43(j)) define suitable shipping condition as meaning:

> ... that the commodity, at time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the contract destination agreed upon between the parties.[10]

---

[9] The Regulations (7 C.F.R. § 46.43(l)) define f.o.b. as meaning, "... that the produce quoted or sold is to be placed free on board the boat, car, or other agency of the through land transportation at shipping point, in suitable shipping condition ..., and that the buyer assumes all risk of damage and delay in transit not caused by the seller irrespective of how the shipment is billed."

[10] The suitable shipping condition provisions of the Regulations (7 C.F.R. § 46.43(j)) which require delivery to contract destination "without *abnormal* deterioration", or what is elsewhere called "good delivery" (7 C.F.R. § 46.44), are based upon case law predating the adoption of the Regulations. See Williston, *Sales* § 245 (rev. ed. 1948). Under the rule it is not enough that a commodity sold f.o.b., U. S. No. 1, actually be U. S. No. 1 at time of shipment. It must also be in such a condition at the time of shipment that it will make good delivery at contract destination. It is, of course, possible for a commodity that grades U. S. No. 1 at the time of shipment, and is shipped under normal transportation service and conditions, to fail to make good delivery at destination due to age or other inherent defects which were not present, or were not present in sufficient degree to be cognizable by the federal inspector, at shipping point. Conversely, since the inherently perishable nature of commodities subject to the Act dictates that a commodity cannot remain forever in the same condition, the application of the good delivery concept requires that we allow for a "normal" amount of deterioration. This means that it is entirely possible for a commodity sold f.o.b. under a U. S. grade description to fail, at destination, to meet the published tolerances of that grade, and thus fail to grade at destination, and nevertheless make good delivery. This is true because under the f.o.b. terms the grade description applies only at shipping point, and the applicable warranty is only that the commodity thus sold will reach contract destination without abnormal deterioration, not that it will meet the grade description at destination. If the latter result is desired then the parties should effect a delivered sale rather than an f.o.b. sale. For all commodities other than lettuce (for

The United States Standards for Grades of Table Grapes[11] provide a tolerance at shipping point of 8% for undersize bunches and for bunches and berries failing to meet the other requirements of the grade, including therein not more than 2% for defects causing serious damage and 0.5% for decay. Where, as here, the product is sold without a grade specification, we apply these percentages to the condition defects disclosed by the inspection. In addition, when we look at a destination inspection to ascertain compliance with the suitable shipping condition warranty, we apply an additional allowance to the tolerances set forth in the standards to allow for normal deterioration in transit. This is because we are looking at the condition at destination to determine compliance with the contract at shipping point. The load of grapes in question was in transit for approximately five days, in which case we allow 15% for average defects, including therein not more than 6% for defects causing serious damage and 3% for decay. As both the average defects and the serious damage disclosed by the inspection of the grapes in question exceed these allowances, we conclude that the grapes were not in suitable shipping condition. Complainant's failure to ship grapes in suitable shipping condition constitutes a breach of contract for which Respondent is entitled to recover provable damages.

The general measure of damages for a breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they

which specific good delivery standards have been promulgated) what is "normal" or abnormal deterioration is judicially determined. See Pinnacle Produce, Ltd. v. Produce Products, Inc., 46 Agric. Dec. 1155 (1987); G & S Produce v. Morris Produce, 31 Agric. Dec. 1167 (1972); Lake Fruit Co. v. Jackson, 18 Agric. Dec. 140 (1959); and Haines Assn. v. Robinson & Gentile, 10 Agric. Dec. 968 (1951).

[11] The United States Standards for Grades of Table Grapes (European or Vinifera Type), § 51.880 through 51.912, published by the United States Department of Agriculture, Agricultural Marketing Service, Fruit and Vegetable Division, Fresh Products Branch, and available in printed form from that source, or on the Internet at http://www.ams.usda.gov/standards/stanfrfv.htm.

would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. U.C.C. § 2-714(2). The value of accepted goods is best shown by the gross proceeds of a prompt and proper resale as evidenced by a proper accounting prepared by the ultimate consignee. While Respondent states it provided Complainant with an account of sales, the accountings submitted in this proceeding show only the average sales price of $10.03 per carton.[12] Accountings that show only an average price are commonly not used to show the value of damaged goods resold by a buyer. See Great American Farms, Inc. v. William P. Hearne Produce Co., Inc., 59 Agric. Dec. 466 (2000); Supreme Berries, Inc. v. R. C. McEntire, Jr., 49 Agric. Dec. 1210 (1990). This is true because information concerning the individual sales is necessary to determine whether the sales were carried out in a prompt and proper manner. Moreover, we note that in the instant case there is evidence that the resales were not prompt, as nearly half of the grapes remained available for inspection on January 3, 2007, or more than three weeks after the first inspection took place. Under the circumstances, we cannot accept the average sales price reported by Respondent's customer as the best available evidence of the value of the grapes as accepted.

Absent an accounting, the value of goods accepted may be shown by use of the percentage of condition defects disclosed by a prompt inspection. Fresh Western Marketing, Inc. v. McDonnell & Blankfard, Inc., 53 Agric. Dec. 1869 (1994). Under this method, the value the grapes would have had if they had been as warranted is reduced by the percentage of condition defects disclosed by a prompt inspection to arrive at the value of the grapes as accepted. The first and best method of ascertaining the value the grapes

---

[12] See Answer, Exhibit #'s 5 and 6.

would have had if they had been as warranted is to use the average price as shown by U.S.D.A. Market News Service Reports. Pandol Bros., Inc. v. Prevor Marketing International, Inc., 49 Agric. Dec. 1193 (1990). The December 11, 2006, U.S.D.A. Market News report for Miami, Florida, the nearest reporting location to Pompano Beach, shows that 19-pound containers of bagged Red Globe grapes were mostly selling for $17.00 to $18.00 per carton. Using the average reported price of $17.50 per carton, we find that the 1,950 cartons of grapes in question had a value if they had been as warranted of $34,125.00. When we reduce this amount by 16% to account for the defects disclosed by the inspection, we arrive at a value for the grapes as accepted of $28,665.00.

As we mentioned, Respondent's damages are measured as the difference between the value the grapes would have had if they had been as warranted ($34,125.00) and their value as accepted ($28,665.00), or $5,460.00. In addition, Respondent may recover the U.S.D.A. inspection fee of $95.00 as incidental damages. With this, Respondent's total damages amount to $5,555.00. When Respondent's damages totaling $5,555.00 are deducted from the $34,540.00 contract price of the grapes, there remains an amount due Complainant for the subject load of grapes of $28,985.00. Respondent paid Complainant $5,170.73 for the grapes. Therefore, there remains a balance due Complainant from Respondent of $23,814.27.

Respondent's failure to pay Complainant $23,814.27 is a violation of Section 2 of the Act for which reparation should be awarded to Complainant. Section 5(a) of the Act requires that we award to the person or persons injured by a violation of Section 2 of the Act "the full amount of damages sustained in consequence of such violations." Such damages include interest. Louisville & Nashville Railroad Co. v. Sloss Sheffield Co.,

269 U.S. 217 (1925); Louisville & Nashville Railroad Co. v. Ohio Valley Tie Co., 242

U.S. 288 (1916). Since the Secretary is charged with the duty of awarding damages,

he/she also has the duty, where appropriate, to award interest. See Pearl Grange Fruit

Exchange, Inc. v. Mark Bernstein Co., Inc., 29 Agric. Dec. 978 (1970); John W. Scherer

v. Manhattan Pickle Co., 29 Agric. Dec. 335 (1970); and W.D. Crockett v. Producers

Marketing Association, Inc., 22 Agric. Dec. 66 (1963). The interest that is to be applied

shall be determined in accordance with 28 U.S.C. § 1961, i.e., the interest rate shall be

calculated at a rate equal to the weekly average one-year constant maturity treasury yield,

as published by the Board of Governors of the Federal Reserve System, for the calendar

week preceding the date of the Order. PGB International, LLC v. Bayche Companies,

Inc., Order on Reconsideration, 65 Agric. Dec. 669 (2006).

Complainant in this action paid $300.00 to file its formal Complaint. Pursuant to

7 U.S.C. § 499e(a), the party found to have violated Section 2 of the Act is liable for any

handling fees paid by the injured party.

239 513 9191 Attney

585 13

## Order

Within 30 days from the date of this Order, Respondent shall pay Complainant as reparation $23,814.27, with interest thereon at the rate of _____1.67_____ % per annum from January 1, 2007, until paid, plus the amount of $300.00.

Copies of this Order shall be served upon the parties.

Done at Washington, DC
April 23, 2008

/s/ William G. Jenson

William G. Jenson
Judicial Officer
Office of the Secretary